OPINION
{¶ 1} This appeal arises from the Trumbull County Court of Common Pleas, wherein judgment was awarded to appellees, Charles and Edward Margala ("the Margalas"), in an action for damage to their leased property.
 {¶ 2} The following facts were presented at trial. The Margalas are two brothers who owned a parcel of land in Liberty Township, Ohio, which they inherited from their father. The Margalas' father had leased the land to Bernard Kurant ("Kurant") in 1955. Kurant operated a junkyard business on the property until May 1, 1991, when the business was sold to Copita, Inc., a business owned and operated by appellant, John Berzo and his wife.[1] Copita, Inc. continued running the junkyard business on the property. Copita, Inc. had purchased the business from Kurant in its entirety, including all cars, tires, and equipment that were situated on the land at the date of purchase. Copita, Inc. continued to run the business for approximately ten years.
 {¶ 3} The original lease between the Margalas and Copita, Inc. ran for five years, after which it continued on a month-to-month basis. At some point during the occupancy, Berezo, contemplating retirement, turned the business over to his son and his wife's son from a previous marriage, who had incorporated under the name Wicked Stepbrothers, Inc. During the majority of the tenancy, the rent payments were paid consistently and timely with no disruption. However, beginning in August 2001, the relationship deteriorated and the rent payments were not paid. Berezo informed the Margalas that the September 2001 rent payment would not be on time. The Margalas informed Berezo by letter, dated August 13, 2001, that he should begin cleaning up the land, restoring it to its original condition in accordance with the lease, so that it could be sold or, in the alternative, to begin making the rent payments.
 {¶ 4} The weeks progressed with little or no cleanup of the property and no rental payments being made. Thus, on September 21, 2001, the Margalas filed an action in the Girard Municipal Court. Their first claim was in forcible-entry-and-detainer, seeking restitution for nonpayment of rent. The second claim was for "damaged to the lease premises," seeking judgment in an amount equal to all of the damages to the leased premises.
 {¶ 5} The parties subsequently agreed that Berezo would make rent payments for September, October, and November 2001, thereby resolving the rental dispute. The second claim for damage to the property was transferred to the Trumbull County Court of Common Pleas for disposition, as the amount in controversy exceeded the jurisdictional limits of the Girard Municipal Court.
 {¶ 6} On February 25, 2002, after the transfer to the common pleas court, Berezo filed an answer to the complaint and a counterclaim. The counterclaim alleged conversion of Berezo's personal property, totaling approximately $30,000, which remained on the parcel, as well as a claim for tortious interference with Berezo's ability to sell his business. Discovery proceeded and the matter was set for a jury trial to commence September 10, 2003. At the commencement of litigation, the property was littered with thousands of tires, wheels, and various other items related to the junkyard business Berezo had conducted on the property for the preceding decade. Berezo admitted in his deposition that he owned the items on the property and that the business purchased from Kurant included all items existing on the property at the time of the purchase.
 {¶ 7} On September 10, 2003, the day the trial commenced, Berezo filed a motion for directed verdict, pursuant to Civ.R. 50(A)(1), and proposed jury instructions. The jury trial proceeded on September 10 and 11, 2003. Berezo objected to the court's jury instructions and its refusal to charge the jury per his proposed instructions. The jury ultimately returned a verdict in favor of the Margalas in the amount of $74,083.84, and against Berezo on his counterclaims.
 {¶ 8} In a judgment entry dated September 12, 2003, the trial court entered judgment on the verdict. On September 23, 2002, Berezo filed a motion for judgment notwithstanding the verdict, pursuant to Civ.R. 50(B); or for a new trial, pursuant to Civ.R. 59. The trial court denied Berezo's motion on October 3, 2003. Berezo subsequently filed this appeal, presenting a single assignment of error.
 {¶ 9} "The trial court erred in sub silentio overruling Defendant-Appellant's Motion for Directed Verdict; rejecting his proposed jury instructions; and denying his Motion for Judgment Notwithstanding Verdict or For a New Trial."
 {¶ 10} In his assignment of error, Berezo contends the trial court erred in denying both the motion for directed verdict and proposed jury instructions, and the motion for judgment notwithstanding the verdict or for a new trial, because the Margalas ultimately proved "an entirely different claim" at trial, without moving to amend the pleadings to conform with the evidence.
 {¶ 11} Essentially, Berezo argues that while the Margalas' complaint asserted, and Berezo prepared to defend, a claim for "temporary damage to real property," the Margalas prevailed in proving the "cost to remove lessee personal property." Thus, Berezo contends that, pursuant to Civ.R. 15(B), the Margalas were required to amend the pleadings to conform to the evidence, as the issues were not tried by express or implied consent of the parties.
 {¶ 12} Civ.R. 15(B) provides, in pertinent part:
 {¶ 13} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues."
 {¶ 14} When a party has not sought leave to amend the pleadings to conform to the evidence and the parties have not expressly consented to the issues, implied consent "will not be permitted where it results in substantial prejudice to a party."[2] Factors to be considered in making a determination as to whether the parties impliedly consented to the litigation of a particular issue include: whether the parties recognized that an issue not in the pleadings entered the case; whether the opposing party had the opportunity to adequately address the issue or would offer additional evidence if the case were tried on a different theory; and whether the witnesses were subject to cross-examination on the particular issue.[3]
 {¶ 15} However, where a party fails to demonstrate that prejudice arose from the failure to amend the pleadings to conform to the evidence, the trial court's decision will not be disturbed.[4]
 {¶ 16} In his brief, Berezo contends the Margalas' complaint asserted a claim for "temporary damage to real property," while at trial the Margalas proved a claim for "cost to remove lessee personal property." Berezo also asserts that he continued to object to the issue of cost of removal of property via his motion for directed verdict and his motion for judgment notwithstanding the verdict or for a new trial.
 {¶ 17} In their original complaint, along with the forcible-entry-and-detainer claim, the Margalas asserted a claim for "damage to the leased premises which cannot be accurately determined until such time as Defendant vacates the leased premises and Plaintiff can inspect and repair any damages." At the conclusion of the jury trial, the Margalas were ultimately awarded $74,083.84 in damages, $60,000 of which consisted of expenses incurred in cleaning up the property to return it to its pre-rental condition, as specified in the lease agreement. The remaining damages were the loss of rental income due to the expansive cleanup period.
 {¶ 18} We note at the outset that Ohio is a notice pleading state and, as such, fact pleading is not required. The original complaint and subsequent pleadings placed Berezo on notice that Margalas sought to restore the property to its pre-rental condition, as specified in the lease agreement. Hence, the distinction Berezo attempts to make regarding the cause of action set forth by the Margalas in their initial pleadings and the issue ultimately proved at trial is truly without a difference. The language in the initial complaint indicated that additional discovery would be necessary to ascertain the amount of items remaining on the property and the related costs associated with removing those items.
 {¶ 19} Subsequent discovery revealed that although Berezo acknowledged ownership of the items, he failed to remove them despite several requests by the Margalas. Moreover, Berezo filed a counterclaim in common pleas court for conversion of his personal property by the Margalas. Berezo subsequently admitted that he had failed to remove the property and that he was informed by the Margalas that he could retrieve them at his convenience. Therefore, although we conclude the cause of action set forth by the Margalas in their initial complaint and subsequent pleadings is directly related to the issue proved at trial, we will also address the issue of whether implied consent to the issue occurred.
 {¶ 20} A review of the record reveals that the Margalas did not seek leave to amend their pleadings to conform to the evidence. Also, as evidenced by his objections both at the close of the Margalas' case and at the conclusion of the trial, Berezo did not expressly consent to the litigation of the issue. Thus, we will address the relevant factors in order to determine whether implied consent to litigate the issue was given.
 {¶ 21} First we consider whether Berezo and Margalas recognized that an issue not in the pleadings entered the case. Berezo claims that his objections at trial evidence his acknowledgment that a new issue had entered the case that he was not adequately prepared to defend. However, as noted above, during the discovery phase of the litigation the issue as to ownership of the items on the property arose, as well as the likely costs associated with removal of such property. Berezo was also questioned about whether he intended to reclaim any of the property and about its probable worth. The issue also arose concerning the environmental hazards associated with the tires and the probable costs associated with cleanup. These factors were sufficient to provide Berezo with notice that the issue of costs associated with returning the land to its pre-rental state would arise at trial. Thus, both parties were aware of the issue, though not included in the pleadings with specificity, as it was unknown at the time, because it was intermingled with the issue of "damage to the leased premises," as noted in the complaint.
 {¶ 22} Second, we turn to whether the opposing party had the opportunity to adequately address the issue or would offer additional evidence if the case were tried on a different theory. Again, the two-year discovery process revealed that the issue of removal of thousands of tires, wheels, and car debris was a primary concern of the Margalas, as they sought to rent the property but needed it in its pre-rental condition, as indicated in the lease agreement. Berezo's responses in his deposition indicated ownership of the items and their relative value, as well as whether he intended on reclaiming the items.
 {¶ 23} Third, we consider whether the witnesses were subject to cross-examination on the particular issue. A review of the two-day trial transcript reveals extensive cross-examination of the Margalas, Kurant, and Berezo concerning what items were on the property at the time of the transfer of the junkyard business from Kurant to Berezo, as well as what property Berezo owned. There was also welldeveloped cross-examination regarding the costs associated with cleaning up the items, most notably the tires and wheels, and how much cleanup had occurred as of that date. Counsel for Berezo questioned the Margalas extensively regarding their ownership of the land as opposed to the items on the land and whether the lease required a return of the land to its pre-rental condition.
 {¶ 24} Therefore, we conclude, utilizing the relevant factors, that, even if a distinction were made between the claim in the initial pleadings and the issues proven at trial, implied consent was given to litigate the issue. The original pleadings placed Berezo on notice that the issue of property remaining on the leased premises was an issue, and the extensive, two-year discovery phase of the litigation clearly brought out the notion that the Margalas were incurring extensive costs associated with returning the property to its pre-rental condition in having to remove approximately sixty thousand tires from the property, as required by the lease agreement. Moreover, the Margalas were subsequently prohibited from leasing the property for an extended period of time due to the lengthy cleanup period.
 {¶ 25} Berezo's assignment of error is without merit.
 {¶ 26} Thus, based on the foregoing, we conclude the trial court did not error when it denied Berezo's motions. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Grendell, J., O'Toole, J., concur.
[1] The correct spelling of appellant's surname is "Berezo." However, on the original complaint filed with the trial court, appellant's surname is spelled "Berzo." Pursuant to App.R. 11(A), this court must docket the appeal under the caption given in the trial court. Appellant's name will be spelled correctly as "Berezo" throughout the body of this opinion.
[2] Evans v. Bainbridge Twp. Trustees (1983), 5 Ohio St.3d 41, paragraph one of the syllabus.
[3] Id.
[4] Twin Lakes Anesthesia Group v. Starkey (May 24, 1996), 11th Dist. No. 95-P-0081, 1996 Ohio App. LEXIS 2199, at *7.